UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------x

CHARDEE PARKER,

        Plaintiff,

    - against -

MANDARICH LAW GROUP, LLP,

        Defendant.

--------------------------------x

**MEMORANDUM AND ORDER**
19-CV-6313

KIYO A. MATSUMOTO, United States District Judge:

        Plaintiff Chardee Parker brought this putative class action on behalf of herself and individuals similarly situated, alleging violations of various provisions of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, by defendant Mandarich Law Group, LLP ("Mandarich").[1]  Plaintiff and defendant have cross-moved for summary judgment.  For the reasons set forth below, defendant's motion for summary judgment is granted in its entirety and plaintiff's motion is denied.

### BACKGROUND

        The court has taken the facts set forth below from the parties' declarations, affidavits, and exhibits, and from the parties' respective Rule 56.1 statements of facts.[2]  Upon

---

[1]    Plaintiff filed this lawsuit as a class action under Rule 23 of the Federal Rules of Civil Procedure, but no motion for Rule 23 class certification has yet been made by plaintiff at the time of the opinion.

[2]    (*See* ECF Nos. 24-14, Defendant's 56.1 Statement ("Def. 56.1"); 26, Plaintiff's Response to Defendant's 56.1 Statement ("Pl. Resp."); 30-9,

consideration of the motions for summary judgment, the court shall construe the facts in the light most favorable to the non-moving party. *See Capobianco v. City of New York*, 422 F.3d 47, 50 n.1 (2d Cir. 2005). Unless otherwise noted, where a party's 56.1 statement is cited, that fact is undisputed or the opposing party has pointed to no evidence in the record to contradict it.[3]

## I.   Factual Background

Defendant Mandarich is a limited liability partnership engaged in the practice of law that regularly collects or attempts to collect debts. (Def. Resp. at 1-2.) Plaintiff is an individual who is a citizen of the State of New York residing in Queens County, New York. (*Id.* at 1.) On November 8, 2018, Mandarich sent an initial collection letter to plaintiff, attempting to collect a debt in the amount of $2,390.07 (the "Collection Letter"). (Pl. Resp. at 5; Def. Resp. at 2.)

The Collection Letter, which forms the basis for plaintiff's claims, is printed on letterhead with the heading "Mandarich Law Group, LLP, Attorneys at Law," and provides details about plaintiff's alleged outstanding debt, including the current creditor (Galaxy International Purchasing, LLC),

_____

Plaintiff's 56.1 Statement ("Pl. 56.1"); 31-1, Defendant's Response to Plaintiff's 56.1 Statement ("Def. Resp.").)

[3]    Although the parties' Rule 56.1 statements contain specific citations to the record to support their statements, the Court has cited to the Rule 56.1 statements, rather than the underlying citation to the record, when utilizing the 56.1 statements for purposes of this summary of facts.

current balance ($2,390.07), date of last payment (7/16/2015), and account number. (ECF No. 1-1, Collection Letter Addressed to Chardee Parker, ("Collection Ltr.").) The body of the letter states, in relevant part, as follows:

> Your account has been sold and assigned to our client, Galaxy International Purchasing, LLC. This office has been hired to collect the above balance that you owe our client. This is a demand for payment of your outstanding obligation.
>
> Please contact Collection Supervisor, John Licata, of our office should you wish to discuss payment arrangements on your account. You can reach us on our toll-free number of 833.769.2757.
>
> Unless you, within thirty days after receipt of this notice, dispute the validity of the debt, or any portion thereof, the debt will be assumed to be valid by us. If you notify us in writing within the thirty-day period that the debt, or any portion thereof, is disputed, we will obtain verification of the debt or a copy of a judgment against you and a copy of such verification or judgment will be mailed to you by us. Upon your written request within the thirty-day period we will provide you with the name and address of the original creditor, if different from the current creditor.
>
> The law does not require us to wait until the end of the thirty-day period before suing you to collect this debt. If, however, you notify us in writing within the thirty-day period described in the prior paragraph that the debt, or any portion thereof, is disputed, or that you request the name and address of the original creditor, the law requires us to suspend our efforts (through litigation or otherwise) to collect the debt until we mail the requested information to you.

*Id.*  The third paragraph is a notice required by the FDCPA to be included in debt collection letters (the "validation notice"). *See* 15 U.S.C. § 1692g.

Below the above items, the Collection Letter has four sentences in bold font:

> **NOTICE: SEE REVERSE SIDE FOR IMPORTANT INFORMATION**
>
> **THIS COMMUNICATION IS FROM A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**
>
> **ALL CALLS TO AND FROM MANDARICH LAW GROUP, LLP MAY BE MONITORED AND/OR RECORDED FOR COMPLIANCE PURPOSES.**
>
> **NEW YORK CITY DEPARTMENT OF CONSUMER AFFAIRS LICENSE NUMBER 2079588-DCA.**

(Collection Ltr. at 1.)  The reverse side of the Collection Letter includes additional legal notices advising the consumer about credit reporting and his or her rights under the FDCPA. (*Id.* at 2.)

## II.  Procedural History

Plaintiff commenced this action on November 7, 2019. (*See* ECF No. 1, Complaint ("Compl.").)  On December 4, 2019, defendant answered to the complaint.  (ECF No. 8, Answer.) Magistrate Judge Steven M. Gold held several conferences with the parties and discovery was closed on August 28, 2010.  (ECF No. 18, Defendant's Letter Confirming Completion of Discovery.)

4

On December 30, 2020, the parties submitted their cross-motions for summary judgment and supporting submissions.  (*See* ECF Nos. 23, Defendant's Notice of Motion for Summary Judgment; 24 Defendant's Memorandum of Law and Supporting Submissions ("Def. Mem."); 25, Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Pl. Opp."); 28, Defendant's Reply in Support of Defendant's Motion for Summary Judgment ("Def. Reply"); 30, Plaintiff's Notice of Motion for Summary Judgment; 31-1, Plaintiff Chardee Parker's Declaration in Support of Motion for Summary Judgment ("Parker Decl."); 31-10, Plaintiff's Memorandum of Law in Support of its Motion for Summary Judgment ("Pl. Mem."); 31, Defendant's Opposition to Plaintiff's Motion for Summary Judgment ("Def. Opp."); 32, Plaintiff's Reply in Support of Plaintiff's Motion for Summary Judgment ("Pl. Reply").)

## LEGAL STANDARD

### I.    Summary Judgment

Summary judgment shall be granted to a movant who demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A fact is 'material' for these purposes when it 'might affect the outcome of the suit under the governing law.'"  *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 104 (2d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  No genuine

issue of material fact exists "unless there is sufficient
evidence favoring the nonmoving party for a jury to return a
verdict for that party." *Anderson*, 477 U.S. at 249.  "If the
evidence is merely colorable, or is not significantly probative,
summary judgment may be granted." *Id.* at 249-50 (internal
citations omitted).

When bringing a motion for summary judgment, the
movant carries the burden of demonstrating the absence of any
disputed issues of material fact and entitlement to judgment as
a matter of law. *Rojas*, 660 F.3d at 104.  In deciding a summary
judgment motion, the court must resolve all ambiguities and draw
all reasonable inferences against the moving party. *Flanigan v.
Gen. Elec. Co.*, 242 F.3d 78, 83 (2d Cir. 2001) (citing
*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,
587 (1986)).  A moving party may indicate the absence of a
factual dispute by "showing . . . that an adverse party cannot
produce admissible evidence to support the fact." Fed. R. Civ.
P. 56(c)(1)(B).

Once the moving party has met its burden, the
nonmoving party normally "must come forward with admissible
evidence sufficient to raise a genuine issue of fact for trial
in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser
Co.*, 536 F.3d 140, 145 (2d Cir. 2008) (citing *Celotex Corp. v.
Catrett*, 477 U.S. 317, 322-23 (1986)).  The standard is the same

when cross motions for summary judgment are made.  *See Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001); *Estrada v. St. Francis Hosp.*, No. 13-cv-1243, 2015 WL 6965202, at *8 (E.D.N.Y. November 10, 2015).

## II.    Motion to Strike

In the summary judgment context, Federal Rule of Civil Procedure Rule 56(c)(4) requires that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4).  "A court may . . . strike portions of an affidavit that are not based upon the affiant's personal knowledge, contain inadmissible hearsay or make generalized and conclusory statements."  *Hollander v. Am. Cyanamid Co.*, 172 F.3d 192, 198 (2d Cir. 1999).

"Materials submitted in support of or in opposition to a motion for summary judgment must be admissible themselves or must contain evidence that will be presented in admissible form at trial."  *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 169-70 (2d Cir. 2014) (quotations and citation omitted); *see also Lyons v. Lancer Ins. Co.*, 681 F.3d 50, 57 (2d Cir. 2012) ("In ruling on a motion for summary judgment, the district court may rely on any material that would be admissible at a trial." (quotations

7

and citation omitted)).  "[W]here a party relies on affidavits or deposition testimony to establish facts, the statements 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.'" *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(c)(4)); *see* Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony.").

"Where an affidavit or declaration contains material that does not comply with Rule 56(c)(4), a Court may either disregard or strike it from the record." *Russo v. Estee Lauder Corp.*, 856 F.Supp.2d 437, 443 (E.D.N.Y. 2012); *see also Pace v. Air & Liquid Sys. Corp.*, 171 F. Supp. 3d 254, 272 (S.D.N.Y. 2016) ("A court may strike portions of an affidavit that are not based upon an affiant's personal knowledge, contain inadmissible hearsay or make generalized and conclusory statements." (quotations and citation omitted)).

Nonetheless, "[t]he test for admissibility of a summary judgment affidavit 'is whether a reasonable trier of fact could believe the witness had personal knowledge[,]'" *Super Express USA Publ'g Corp. v. Spring Publ'g Corp.*, No. 13-

cv-2813, 2017 WL 1274058, at *6 (E.D.N.Y. Mar. 24, 2017)
(quoting *Serrano*, 863 F. Supp. 2d at 163), and "an affiant is
under no obligation to specify the source of his personal
knowledge." *Bank of Am., N.A. v. Kamico, Inc.*, No. 11-cv-5255,
2012 WL 1449185, at *5 (S.D.N.Y. Apr. 24, 2012). "The lack of
certain specific details or arguably vague statements will not
render the affidavit inadmissible, but affect the weight and
credibility of the testimony, which have to be determined by the
trier of fact at trial." *Serrano v. Cablevision Sys. Corp.*, 863
F.Supp.2d 157, 163 (E.D.N.Y. 2012). Moreover, "an affiant may
testify as to the contents of records she reviewed in her
official capacity." *Madden v. Town of Hempstead*, No. 16-cv-6835
(SJF)(AKT), 2019 WL 1439935, at *12 (E.D.N.Y. Mar. 29, 2019)
(quoting *Searles v. First Fortis Life Ins. Co.*, 98 F. Supp. 2d
456, 461 (S.D.N.Y. 2000)).

## DISCUSSION

Plaintiff and defendant have cross-moved for summary
judgment as to plaintiff's claims under the FDCPA. (*See* ECF
Nos. 23, 30.) In support of defendant's motion for summary
judgment, defendant attached an affidavit from Claire Whitlatch,
Esq., a partner at Mandarich (the "Whitlatch Affidavit"). (*See*
ECF No. 24-1, Affidavit of Claire Whitlatch ("Whitlatch Aff.").)
In sum, Whitlatch describes her role as managing partner at
Mandarich, her supervision of letters sent in debt collection

9

efforts, her knowledge of internal firm policies and records involving debt collection efforts, and her knowledge of plaintiff's account file after it.  (*See generally* Whitlatch Aff.)  Shortly after the cross-motions for summary judgment were fully-briefed, plaintiff moved to strike Ms. Whitlatch's affidavit, *in toto*, or alternatively, certain provisions of the affidavit as improper under the Federal Rules of Evidence.  (*See* ECF No. 36.)

"Because a decision on the motion to strike may affect [the movant's] ability to prevail on summary judgment, it is appropriate to consider a motion to strike prior to a motion for summary judgment."  *Pugliese v. Verizon N.Y., Inc.*, No. 05-cv-4005 (KMK), 2008 WL 2882092 (S.D.N.Y. July 10, 2008) (internal quotations and citation omitted).  For the reasons set forth below, the court declines to strike Ms. Whitlatch's affidavit and supporting exhibit.

## I.    Plaintiff's Motion to Strike the Whitlatch Affidavit & Supporting Exhibit C

Plaintiff moves to strike the Whitlatch Affidavit filed in support of defendant's motion for summary judgment *in toto*, or alternatively, moves to strike certain provisions of the affidavit as improper under the Federal Rules of Evidence. (*See generally* ECF No. 36, Plaintiff's Motion to Strike ("Pl's

Mot. to Strike").) [4] Specifically, plaintiff argues that Ms.
Whitlatch's statements in the affidavit contradict statements
made in her Federal Rule of Civil Procedure 30(b)(6) ("Rule
30(b)(6)") deposition and, accordingly, cannot now be used at
summary judgment in support of defendant's motion for summary
judgment. (*See* ECF No. 38, Plaintiff's Reply Memorandum of Law
in Support of Motion to Strike ("Pl's Reply for Mot. to
Strike"), at 2-4 (citing Federal Rule of Evidence 602).)
Plaintiff also argues that the Whitlatch Affidavit is improper
because it contains irrelevant information, constitutes
impermissible hearsay, and lacks a proper foundation. (*See* Pl's
Mot. to Strike at 3-9.) Finally, plaintiff also seeks to
preclude Exhibit C to the Whitlatch Affidavit (the "history
report") because defendant failed to produce the document during
discovery and the document is impermissible hearsay. (*Id.* at 9-
10.)

In response, defendant broadly argues that plaintiff's
evidentiary objections are meritless because Ms. Whitlatch's
statements contained in the affidavit are relevant, have a
proper foundation, and are based on personal knowledge. (*See*
ECF No. 37, Defendant's Opposition to Plaintiff's Motion to
Strike ("Def's Opp. to Mot. to Strike").) Further, defendant

---

[4]     Plaintiff failed to include page numbers in her motion to strike.
Accordingly, the page references cited herein refer to the ECF generated page
numbers in the header of each page.

argues that Exhibit C consisting of the history report does not constitute impermissible hearsay and was not produced during discovery due to plaintiff's "failure to meaningfully participate in the discovery process." (*Id.* at 10-11 (footnote omitted).)

Having reviewed the Whitlatch Affidavit and supporting submissions, the court respectfully denies plaintiff's motion to strike the Whitlatch Affidavit *in toto*, or alternatively, to strike portions of the affidavit. *See M.V.B. Collision, Inc. v. Allstate Ins. Co.*, 728 F. Supp. 2d 205, 209 (E.D.N.Y. 2010) (explaining that the district court is "not obligated to engage in the time-consuming, cumbersome process of formally striking [inadmissible] evidence in a line-by-line fashion," rather the court may "simply disregard the allegations that are not properly supported."). To the extent the Whitlatch Affidavit violates the Federal Rules of Civil Procedure or Evidence, the court disregards those statements.

A.   Plaintiff's Evidentiary Objections

Turning to the merits of plaintiff's evidentiary objections, the court agrees with defendant that plaintiff's objections are meritless because the Whitlatch Affidavit: (1) is based on personal knowledge and lays a proper foundation, (2)

does not contradict Ms. Whitlatch's Rule 30(b)(6) deposition, and (3) does not contain impermissible hearsay.[5]

First, the Whitlatch Affidavit is admissible for the purposes of this summary judgment motion because the affidavit is based on Ms. Whitlatch's personal knowledge and provides a proper foundation.  Although plaintiff argues that the affidavit is not based on personal knowledge because Ms. Whitlatch was not involved in the handling of plaintiff's account documents and was not involved in the development of the "Attorney Meaningful Involvement Procedure" (see Pl's Mot. to Strike at 3-5), "an affiant may testify as to the contents of records she reviewed in her official capacity." *Madden*, 2019 WL 1439935, at *12.  In her declaration, Ms. Whitlatch attests that she was a partner at Mandarich Law Group, LLP "at all relevant times" described in plaintiff's complaint, and that, in that capacity, she was "aware of and am required to comply with Mandarich Law Group, LLP's policies and procedure," reviewed "documentation and evidence of debt owed to [creditor] clients," and also served as "a custodian of records and am familiar with [Mandarich's]

---

[5]     Plaintiff's objection that Ms. Whitlatch's affidavit "neither references 28 U.S.C. §1746 nor is sworn to before a notary public" (*see* Pl's Mot. to Strike at 3), is refuted by the plain text of the affidavit and is accordingly rejected by the court as meritless.  (*Compare* Whitlatch Aff. at 10 ("I declare under penalty of perjury under the laws of the United States of America that the forgoing is true and correct.")), *with* 28 U.S.C. § 1746(2) (requiring sworn affidavits contain the following statement: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date).").

record keeping procedures." (Whitlatch Aff. ¶¶ 3, 5-6.)

Furthermore, in preparing her affidavit, Ms. Whitlatch "relied

on the particular Mandarich business records with which I am

familiar which are attached hereto as well as my own personal

knowledge about Mandarich's record keeping systems, policies,

business and practices." (*Id.* ¶ 7.) Notably, a substantial

portion of plaintiff's evidentiary objections target specific

statements in the Whitlatch Affidavit that summarize Whitlatch's

review of information contained in Mandarich's business records

and plaintiff's account file. (*See* Pl's Mot. to Strike at 6-7.)

Because Ms. Whitlatch's affidavit was based on her review of

defendant's business records in her capacity as a partner at

Mandarich, the court concludes that Ms. Whitlatch has sufficient

personal knowledge to support the sworn statements contained in

her affidavit (which are all corroborated by the admissible

records); the declaration is therefore admissible. *See Hogan v.*

*Lewis Cty.*, No. 16-cv-1325 (LEK)(ATB), 2018 WL 4689094, at *13

(N.D.N.Y. Sept. 28, 2018) (finding sufficient personal knowledge

where affiant did not join District Attorney's office until

after charges were made because "an affiant may testify as to

the contents of records she reviewed in her official capacity");

*Searles*, 98 F. Supp. 2d at 461-62 (finding sufficient personal

knowledge where the affiant was a corporate officer of the

14

defendant, which qualified her to review the relevant business materials and make sworn statements based upon those materials).

Second, having reviewed the parties' submissions and exhibits, the court also concludes that Ms. Whitlatch's affidavit does not contradict her Rule 30(b)(6) deposition testimony.  The fact that Ms. Whitlatch did not personally process plaintiff's file, as she testified at her deposition, does not render contradictory her affidavit that she reviewed documents and her knowledge of defendant's procedures, policies, and practices.  The Second Circuit has explained that Rule 30(b)(6) testimony "is 'binding' in the sense that whatever its deponent says can be used against the organization . . . [b]ut Rule 30(b)(6) testimony is not 'binding' in the sense that it precludes the deponent from correcting, explaining, or supplementing its statements." *Keepers, Inc. v. City of Milford*, 807 F.3d 24, 34 (2d Cir. 2015).  In other words, the well-settled "sham-affidavit rule," which "prevents a party from manufacturing an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony" is inapplicable in the context of a Rule 30(b)(6) deponent's allegedly contradictory testimony.  *Id.* at 35.  Thus, even if Ms. Whitlatch contradicted statements she made as a Rule 30(b)(6) deponent, such contradictions would not preclude use of

an affidavit made after Ms. Whitlatch's review of plaintiff's file for purposes of defendant's motion for summary judgment.

Specifically, plaintiff contends that the provisions referencing Ms. Whitlatch's knowledge of plaintiff's account-level documentation should be stricken because Ms. Whitlatch testified at the Rule 30(b)(6) deposition that she was not involved in handling plaintiff's account.  (*See* Pl's Reply to Mot. to Strike at 6 (citing Whitlatch Aff. ¶¶ 27, 33-40, 46-47 and 49-57); *see* ECF No. 29, Stipulation regarding Ms. Whitlatch's Deposition Testimony, Joint Deposition Transcript Appendix, Ex. 3 at 74:14-18 (Q: So you said you were not involved with this account at the time it was being handled by Mandarich? A: No, I was not involved with this account, no")). Upon specific review of Ms. Whitlatch's deposition excerpts provided to the court, the court discerns no contradictions. Further, as discussed above, Ms. Whitlatch's statements describing plaintiff's account-level information is permitted for purposes of adjudicating the parties' motions for summary judgment because the Whitlatch Affidavit supplements testimony Ms. Whitlatch provided at her Rule 30(b)(6) deposition and is based on a review of plaintiff's account file made in her capacity as a partner at Mandarich. *See, e.g.*, *AmTrust N. Am., Inc. v. KF&B, Inc.*, No. 17-cv-5340 (LJL), 2020 WL 5578675, at *1 (S.D.N.Y. Sept. 16, 2020) (declining to strike testimony of

16

affiant on the grounds that it is inconsistent with testimony
that the affiant gave on behalf of plaintiffs as their Rule
30(b)(6) witness).  Furthermore, statements Ms. Whitlatch made
at her deposition in *Felberbaum v. Mandarich*, 19-cv-04249 (KAM)
(VMS), disclaiming involvement in the development of the
"Attorney Meaningful Involvement Procedure" are also not
sufficient to strike her affidavit here, because Ms. Whitlatch's
involvement or non-involvement in implementation of the internal
firm policy is irrelevant to the statements made in her
affidavit, which was sworn to in her capacity as a partner at
Mandarich and after review of the "Attorney Meaningful
Involvement Procedure."  (Pl's Reply to Mot. to Strike (citing
Deposition Transcript of Claire Whitlatch in *Felberbaum v.
Mandarich Law Group*, 19-cv-04249 (KAM)(VMS) at 29:7-31:14)).

        Third, the contents of the Whitlatch Affidavit also do
not constitute impermissible hearsay.  "To lay a proper
foundation for a business record, a custodian or other qualified
witness must testify that the document was kept in the course of
a regularly conducted business activity and also that it was the
regular practice of that business activity to make the
record."  *United States v. Komasa*, 767 F.3d 151, 156 (2d Cir.
2014).  As explained above, Ms. Whitlatch prepared her affidavit
in her capacity as a partner at Mandarich and the "custodian of
records . . . familiar with the firm's record keeping

procedures." (Whitlatch Aff. ¶¶ 5-6.) Indeed, throughout the affidavit, Ms. Whitlatch confirms that her statements are based on "personal knowledge about Mandarich's record keeping systems, policies, business and practices," and each document attached to the affidavit was "prepared in the ordinary course of business by Mandarich and it was customary to make, maintain, and utilize these documents in Mandarich's business." (*Id.* ¶¶ 7, 19.) Therefore, the statements reflected in Ms. Whitlatch's affidavit are admissible because they are based on exceptions to the rule against hearsay. Fed. R. Evid. 803(6) (statements constituting records of regularly conducted business activity "are not excluded by the rule against hearsay").

To the extent Ms. Whitlatch described business records created by entities other than Mandarich, it is well-settled that a custodian need not have personal knowledge of the actual creation of a document in order to attest to its contents. *See Phoenix Assocs. III v. Stone*, 60 F.3d 95, 101 (2d Cir. 1995) (stating that "[t]he custodian need not have personal knowledge of the actual creation of the document" to lay a proper foundation. (internal citation and quotation marks omitted)); *see also Thomas v. Midland Credit Mgmt., Inc.*, No. 17-cv-00523 (ADS)(ARL), 2017 WL 5714722, at *9 (E.D.N.Y. Nov. 27, 2017) (concluding that an individual who "accesses and routinely review[s]" business records, including account-level debt files,

from different entities was a "custodian of those records" and
therefore "laid a proper foundation for the business records").
To be sure, Ms. Whitlatch confirms that she is familiar with
records provided by plaintiff's creditors because Ms. Whitlatch
"deal[s] with statements of account on a daily basis in the area
of creditors, including those involving Galaxy and Genesis . . .
[and] Mandarich has integrated these documents into its records
and routinely relies on them in its representation of Galaxy."
(Whitlatch Aff. ¶ 31.)  For these reasons, the court concludes
that the contents of the Whitlatch Affidavit and the supporting
exhibits do not constitute impermissible hearsay.

     B.   <u>Plaintiff's Motion to Preclude the History Report</u>

Plaintiff argues that Exhibit C (the "history report")
attached to the Whitlatch Affidavit should be precluded pursuant
to Rule 37(c) of the Federal Rules of Civil Procedure because
the history report was disclosed after the close of discovery,
allegedly in violation of defendant's discovery obligations.
(Pl. Mot. to Strike at 6.)  The court finds preclusion
unwarranted and has considered the history report in evaluating
the parties' instant cross-motions for summary judgment.

Rule 37 of the Federal Rules of Civil Procedure
authorizes sanctions for failing to comply with discovery
obligations.  "If a party fails to provide information or
identify a witness as required by Rule 26(a) or (e), the party

is not allowed to use that information or witness to supply evidence on a motion ... unless that failure was substantially justified or harmless."  Fed. R. Civ. P. 37(c)(1).  Nonetheless, courts have concluded that "[p]reclusion is a 'harsh remedy' that 'should be imposed only in rare situations.'"  *Izzo v. ING Life Ins. & Annuity Co.,* 235 F.R.D. 177, 186 (E.D.N.Y. 2005) (quoting *Update Art, Inc. v. Modiin Publ'g, Ltd.,* 843 F.2d 67, 71 (2d Cir. 1988)); *see Update Art, Inc. v. Modiin Pub., Ltd.,* 843 F.2d 67, 71 (2d Cir. 1988) (noting that preclusion of evidence is a "harsh remed[y] and should be imposed only in rare situations"); *Hamilton v. City of Peekskill Police Dep't,* No. 13-cv-8138 (NSR), 2015 WL 4635692, at *4 (S.D.N.Y. Aug. 3, 2015) ("[T]he imposition of sanctions under Rule 37(c) for failure to comply with disclosure obligations is discretionary, and preclusion will be ordered only in rare cases.").

In considering whether preclusion of information is warranted under Rule 37(c), a district court must consider "(1) the party's explanation for the failure to comply with the disclosure requirement; (2) the importance of the [evidence]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new [evidence]; and (4) the possibility of a continuance."  *Design Strategy, Inc. v. Davis,* 469 F.3d 284, 296 (2d Cir. 2006) (alteration omitted).

Here, plaintiff argues that this history report was "duly demanded in Plaintiff's First Request for the Production of Documents and was not produced in response thereto." (Pl. Mot. to Strike at 6.) Defendant admits that the history report was "arguably responsive to Plaintiff's Request to Produce No. 23," but notes that defendant timely objected to plaintiff's request and plaintiff made no additional effort to obtain the history report from defendant. (Def's Opp. to Mot. to Strike at 10-11.) In relevant part, defendant's response to plaintiff's request for production stated:

> REQUESTS TO PRODUCE
>
> 23. Notes and entries in Defendant's computer system concerning Plaintiff and/or the Debt.
>
> RESPONSE: Defendant OBJECTS to Request No. 23 as calling for attorney-client privilege and work product. Defendant is withholding documents responsive to Request No. 23 pursuant to privilege including its Account History report prepared for purposes of litigation against Plaintiff. The report was prepared by Defendant and is in possession of its counsel.

(ECF No. 30-6, Defendant's Responses to Plaintiff's Request for Production, Response #23, at 5.) Defendant identified the "Account History report" and stated its position that the report was protected by the attorney-client privilege or by the work product doctrine. (*Id.*) The record does not reflect that plaintiff moved to compel discovery or meet and confer with

defense counsel to resolve disputes regarding the report.
Accordingly, defendant argues that plaintiff failed to
meaningfully participate in the discovery process and cannot now
seek to preclude the history report.  (Def's Opp. to Mot. to
Strike at 11.)

Applying the foregoing factors here, the court
concludes that this case is not a "rare situation[]" where
preclusion of the history report is warranted and, accordingly,
denies plaintiff's motion to preclude the history report.
First, as noted above, defendant provided a reasonable
explanation why defendant identified but did not produce the
history report to plaintiff -- namely, defendant's belief that
the history report was covered by the attorney-client privilege
or work-product doctrine.  (Def's Opp. to Mot. to Strike at 10-
11); *see, e.g.*, *Cargill, Inc. v. Sears Petroleum & Transp.
Corp.*, 334 F. Supp. 2d 197, 247-48 (N.D.N.Y. 2004) (declining to
preclude evidence under Rule 37, which was previously withheld
on the basis of attorney-client privilege).  In other words,
defendant's decision not to disclose the history report was
based on appropriate grounds and plaintiff could have sought a
ruling regarding the applicability of the attorney-client
privilege or work-product doctrine.  *See Lujan v. Cabana Mgmt.,
Inc.*, 284 F.R.D. 50, 68 (E.D.N.Y. 2012) ("Substantial
justification may be demonstrated where there is justification

22

to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request or if there exists a genuine dispute concerning compliance.").

Second, the history report is significant and important to defendant's motion for summary judgment regarding plaintiff's claim that the Collection Letter was not supported by meaningful attorney involvement because the history report describes the different responsibilities and processes an attorney performed in evaluating the collection of plaintiff's debt.

Third, the prejudice suffered by plaintiff was, in large part, due to plaintiff's failure to actively participate in the discovery process. Indeed, the plain language of defendant's response notes that "Defendant is withholding documents responsive to Request No. 23 pursuant to privilege including its Account History report prepared for purposes of litigation against Plaintiff. The report was prepared by Defendant and is in possession of its counsel." (ECF No. 30-6, Defendant's Responses to Plaintiff's Request for Production, Response #23, at 5.) Accordingly, plaintiff was aware of the existence of the "Account History report," and failed to follow up and obtain a court order compelling production of the materials from defendant. To the contrary, the docket shows

23

that plaintiff failed to respond to defendant's discovery
requests, leading to a letter from defendant to Magistrate Judge
Gold, detailing plaintiff's noncompliance with her discovery
obligations. (*See* ECF No. 14, Letter from Defendant dated June
5, 2020 (describing defendant's efforts to obtain discovery
responses from plaintiff).)  The docket also shows that
plaintiff took no action to meet and confer and seek court
intervention to compel discovery from defendant.  For these
reasons, any objection plaintiff now makes regarding the
inclusion of the history report is unwarranted based, in part,
on plaintiff's failure to actively seek a discovery order during
this litigation.

Finally, a continuance is not warranted here, as
plaintiff has given no indication that she would like additional
time to depose the attorney who reviewed plaintiff's account or
anyone else potentially involved in creating the history report.
*See Young v. Cabrera*, No. 18-cv-3028 (RPK)(ST), 2020 WL 7042759,
at *7 (E.D.N.Y. Nov. 30, 2020).  Plaintiff has also not moved to
resist summary judgment on the grounds that she needs additional
discovery to rebut the Whitlatch Affidavit.  *See* Fed. R. Civ. P.
56(d).  Moreover, as discussed above, plaintiff was aware of the
existence of the history report and failed to actively seek the
document from defendant; accordingly, the goal underlying Rule
37 to prevent the practice of "sandbagging" an opponent with new

evidence is not applicable here.  *See Fleming v. Verizon New York, Inc.*, 2006 WL 2709766, at *7-8 (S.D.N.Y. Sept. 22, 2006) (noting the purpose of Fed. R. Civ. P. 37(c)(1) is to "prevent the practice of 'sandbagging' an opposing party with new evidence").  Considering all the factors, and in light of the totality of circumstances, the court finds in its discretion that excluding the history report is not warranted as a sanction pursuant to Rule 37.

Having concluded that the Whitlatch Affidavit and supporting exhibits are admissible for purposes of resolving plaintiff's and defendant's cross-motions for summary judgment, the court next turns to the merits of the parties' motions for summary judgment.

## II.  The Parties' Cross-Motions for Summary Judgment

Plaintiff brought this action pursuant to the FDCPA and both parties have cross-moved for summary judgment on all of plaintiff's claims.  "A violation under the FDCPA requires that (1) the plaintiff be a 'consumer' who allegedly owes the debt or a person who has been the object of efforts to collect a consumer debt, (2) the defendant collecting the debt must be considered a 'debt collector,' and (3) the defendant must have engaged in an act or omission in violation of the FDCPA's requirements."  *Derosa v. CAC Fin. Corp.*, 278 F. Supp. 3d 555, 559-60 (E.D.N.Y. 2017), *aff'd*, 740 F. App'x 742 (2d Cir. 2018).

The parties do not dispute that plaintiff has satisfied the first two elements of her FDCPA claim: (1) that plaintiff is a consumer who allegedly owes a debt; and (2) that Mandarich is a debt collector under the FDCPA. (*See* Def. Resp. ¶¶ 1, 3-4; ECF No. 8, Answer, ¶¶ 6, 9); *see* 15 U.S.C. § 1692a(3) (A "consumer" is defined as "any natural person obligated or allegedly obligated to pay any debt"); § 1692a(6) (A "debt collector" is a person "who regularly collects . . . debts owed . . . another" or a person involved "in any business the principal purpose of which is the collection of any debts."). Because it is undisputed that plaintiff is a consumer and that Mandarich is a debt collector, the only remaining question is the final element of plaintiff's FDCPA claim: whether Mandarich engaged in any act or omission in violation of the FDCPA.

Plaintiff challenges the Collection Letter on the following grounds in her complaint: The first and second counts allege that the letter fails to state the amount of debt purportedly owed in violation of §§ 1692g(a)(1), 1692e, 1692e(2)(A), and 1692e(10) (*see* Compl. ¶¶ 35-68); the third and fourth counts allege that the letter fails to identify the correct creditor to whom plaintiff's alleged debt is purportedly owed in violation of §§ 1692g(a)(2), 1692e, 1692e(2)(A), and 1692e(10) (*id.* ¶¶ 69-116); the fifth and seventh counts allege that the letter's format and letterhead overshadow the

statutorily required validation notice in violation of §§ 1692g, 1692e (*id.* ¶¶ 117-153, 168-220); and the plaintiff alleges in count six that the letter misleads the consumer into believing that an attorney was meaningfully involved in a review of her debt in violation of § 1692e(3) (*id.* ¶¶ 154-67).

Section 1692(e) states, in relevant part, that a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." The subsections plaintiff alleges that defendant violated are:

- 1692e(2)(A): The false representation of the character, amount, or legal status of any debt.

- 1692e(3): The false representation or implication that any individual is an attorney or that any communication is from an attorney.

- 1692e(10): The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

Plaintiff also alleges that defendant violated Section 1692g(a), which provides that the defendant's collection letter must contain the following information:

> (1) the amount of the debt; (2) the name of the creditor to whom the debt is owed; (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector; (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion

> thereof, is disputed, the debt collector will
> obtain verification of the debt or a copy of
> a judgment against the consumer and a copy of
> such verification or judgment will be mailed
> to the consumer by the debt collector; and (5)
> a statement that, upon the consumer's written
> request within the thirty-day period, the debt
> collector will provide the consumer with the
> name and address of the original creditor, if
> different from the current creditor.

"Debt collectors violate the FDCPA if they fail to

provide this information or if they provide this information but

then make other 'communications' that 'overshadow' parts of the

disclosure — namely, the so-called 'validation notice' required

by subsections (3) through (5), which informs consumers that

they have a right to verify and dispute the debt and to receive

information about the original creditor." *Taylor v. Am.*

*Coradius Int'l, LLC*, No. 19-cv-4890 (EK)(VMS), 2020 WL 4504657,

at *1 (E.D.N.Y. Aug. 5, 2020).

Plaintiff also alleges that defendant violated

Section 1692g(b), which provides as follows:

> If the consumer notifies the debt collector in
> writing within the thirty-day period described
> in subsection (a) that the debt, or any
> portion thereof, is disputed, or that the
> consumer requests the name and address of the
> original creditor, the debt collector shall
> cease collection of the debt, or any disputed
> portion thereof, until the debt collector
> obtains verification of the debt or a copy of
> a judgment, or the name and address of the
> original creditor, and a copy of such
> verification or judgment, or name and address
> of the original creditor, is mailed to the
> consumer by the debt collector. Collection

28

> activities and communications that do not
> otherwise violate this subchapter may continue
> during the 30-day period referred to in
> subsection (a) unless the consumer has
> notified the debt collector in writing that
> the debt, or any portion of the debt, is
> disputed or that the consumer requests the
> name and address of the original creditor. Any
> collection activities and communication
> during the 30-day period may not overshadow or
> be inconsistent with the disclosure of the
> consumer's right to dispute the debt or
> request the name and address of the original
> creditor.

In determining whether a communication violates the FDCPA, courts analyze the communication using a "least sophisticated consumer" standard. *Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360, 363 (2d Cir. 2005). Under this standard, "a collection notice can be misleading if it is open to more than one reasonable interpretation, at least one of which is inaccurate." *Taylor v. Fin. Recovery Servs.*, 886 F.3d 212, 214 (2d Cir. 2018) (internal quotation marks and citation omitted). The standard, however, will not render debt collectors liable for "bizarre or idiosyncratic interpretations of debt collection letters," *Greco*, 412 F.3d at 363 (internal quotation marks and citation omitted), or "unreasonable misinterpretations of collection notices," *Clomon v. Jackson*, 988 F.2d 1314, 1319 (2d Cir. 1993).

As a foundational matter, the court must first address the parties' conflicting statements of law regarding the burden

29

of proof in FDCPA actions.  (*See* Pl. Opp. at 4-5; Def. Reply at
1-2.)  It is well-settled that, "[i]n a civil case, the
plaintiff bears the burden of proving the elements of his claim
by a preponderance of the evidence." *Velasquez v. United States
Postal Serv.*, 155 F. Supp. 3d 218, 227 (E.D.N.Y. 2016).  At the
summary judgment stage, the Second Circuit has explained that
where, as here, a defendant moves for summary judgment against a
plaintiff who bears the burden of proving the factual elements
of the claims asserted, if the "defendant-movant submits an
evidentiary proffer sufficient to defeat a claim, a plaintiff
who bears the burden of proof cannot win without proffering
evidence sufficient to allow a trier of fact to find in its
favor on each fact material to its claim(s)." *Jackson v. Fed.
Exp.*, 766 F.3d 189, 195 n.3 (2d Cir. 2014); *see also Powell v.
Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 84 (2d Cir. 2004) (Once
defendant-movant "demonstrates an absence of a genuine issue of
material fact," plaintiff bears burden of production to show
"specific facts showing that there is a genuine issue for trial"
for each such fact).

     Applying these principles to the summary judgment
motions here, the court notes that once defendant-movant has
submitted evidence establishing that there is no genuine dispute
of material fact regarding the viability of plaintiff's FDCPA
claims, it is insufficient for plaintiff to argue, *inter alia*,

that defendant failed to prove its compliance with the FDCPA
(i.e., failed to prove plaintiff's obligation to pay the
underlying debt, failed to show proper chain of title
transferring ownership of the debt, and failed to show defendant
did not misrepresent the amount of the debt).  As a non-moving
party with the burden of proof, once confronted with defendant's
admissible evidence showing no genuine dispute of material fact,
plaintiff must provide admissible evidence establishing a
factual dispute regarding defendant's alleged violation of the
FDCPA in order to withstand defendant's motion for summary
judgment.  *See Jenkins v. LVNV Funding, LLC*, No. 14-cv-5682
(SJF)(AKT), 2017 WL 1323800, at *8 (E.D.N.Y. Feb. 28, 2017)
(requiring debt buyer to produce agreement between debtor and
original creditor to refute a FDCPA § 1692(f) violation "turns
the burden on its head"); *Moore v. Mortg. Elec. Registration
Sys., Inc.*, No. 10-cv-241, 2013 WL 1773647, at *4 (D.N.H. Apr.
25, 2013) (observing that "the defendants are not required to
prove that they did not violate the FDCPA; rather, the
[plaintiffs] must prove that they did").

     With these principles in mind, the court turns to the
merits of plaintiff's FDCPA claims.  For the reasons set forth
below, the court grants defendant's motion for summary judgment
as to all of plaintiff's claims.

### III. **The Amount of the Alleged Debt and Identification of the Creditor (Counts 1, 2, 3, and 4)**

Plaintiff asserts that defendant violated Sections 1692e, 1692e(2)(A), 1692e(10), 1692g(a)(1), and 1692g(a)(2) by failing to state the amount of any debt allegedly owed and by failing to state the name of the creditor or falsely stating the name of the creditor. (*See* Compl. ¶¶ 35-116 (Counts 1, 2, 3, and 4); Pl. Opp. at 9-16.)  In support of her motion, plaintiff states that the "common thread of all of" plaintiff's claims is that plaintiff did not incur the debt -- in other words, that "[d]efendant has failed to come forward with any evidence to establish the existence of the alleged Debt." (Pl. Mem. at 14-15.)  Further, in opposition to defendant's motion to dismiss, plaintiff argues that "there is no evidence in the record to show that debt ever existed and, if it did, that Galaxy is the creditor to whom the Alleged Debt is purportedly owed, and Plaintiff avers that she does not know who or what Galaxy is and/or its alleged connection to the debt purportedly owed." (Pl. Opp. at 16.)  Plaintiff concludes that "[a]bsent such proof," the court "must find" that Mandarich was seeking to collect a debt on behalf of an entity with no rights to the alleged debt, and therefore violated the FDCPA "as a matter of fact and law." (*Id.*)

In response, defendant argues that evidence in the record refutes plaintiff's unsupported assertions because the Collection Letter accurately states both the amount of plaintiff's debt and the creditor to whom that debt is owed. (Def. Opp. at 2-3 (citing ECF No. 24-3, Exhibit C (sales documents establishing chain of title and redacted exhibit reflecting details concerning plaintiff's credit account with Raymour & Flanigan))).

Under the FDCPA, a debt collector is obligated to identify "the name of the creditor to whom the debt is owed," 15 U.S.C. § 1692g(a)(2), and "may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt," 15 U.S.C. § 1692e.  Whether the debt collection letter identifies the name of the creditor to whom the debt is owed is assessed from the perspective of the "least sophisticated consumer." *Ocampo v. Client Servs., Inc.*, No. 18-CV-4326 (BMC), 2019 WL 2881422, at *2 (E.D.N.Y. July 3, 2019) (quoting *Clomon*, 988 F.2d at 1318).

Upon review of the record presented by the parties, the court concludes that no reasonable jury could find from the Collection Letter that Mandarich violated the FDCPA by failing to state the amount of any debt owed and by failing to state the name of the creditor or falsely stating the name of the creditor.  A plain reading of the Collection Letter shows that

the letter conforms with the requirements set forth in §
1692g(a)(2) and clearly states "the name of the creditor to whom
the debt is owed."  Specifically, in the letter, Mandarich
properly identified the "Current Creditor," "Original Creditor,"
"Original Creditor Account No.," and "Current Balance Due:
$2,390.07."  (*See* Collection Ltr.)  Furthermore, the first
sentence of the Collection Letter states that plaintiff's
"account has been sold and assigned to our client, Galaxy
International Purchasing, LLC."  (*Id.*)

          Under these circumstances, the court concludes that
the least sophisticated consumer in plaintiff's position would
understand that she has a credit card, and she can match the
account number for this credit card with the account number on
the letter.  *See Glick v. Client Servs., Inc.*, No. 18-cv-913
(RRM)(CLP), 2020 WL 6018866, at *3 (E.D.N.Y. Sept. 29, 2020)
(concluding that least sophisticated consumer could match Chase
Credit Card with account number in collection letter); *Ocampo*,
2019 WL 2881422, at *2 (concluding that least sophisticated
consumer could match Walmart Credit Card with account number in
collection letter identifying Synchrony Bank, even if plaintiff
did not understand the relationship between Synchrony and
Walmart).  Here, plaintiff need not be an "expert on credit card
processing" to match the account number provided with the
Raymour & Flanigan credit card "in her wallet that she used to

34

incur thousands of dollars in unpaid debt." *Ocampo*, 2019 WL
2881422, at *2; *see also Eger v. Sw. Credit Sys., L.P.*, No. 17-
cv-0819 (SJF)(AYS), 2019 WL 1574802, at *5 (E.D.N.Y. Apr. 11,
2019) ("[E]ven the least sophisticated consumer is assumed to
know how to verify his or her account by cross-referencing it to
the account number provided."). Thus, even if plaintiff did not
recognize Galaxy International Purchasing, LLC as the current
creditor, there is no requirement under the FDCPA that the
defendant notify the plaintiff of a sale of plaintiff's debt.
*See Taylor*, 2020 WL 4504657, at *2 ("there is simply no
requirement in the statute that a debt-collection notice clearly
describe every step in the chain of ownership that the debt
travels to arrive in the current creditor's possession. Rather,
the statute requires identification only of 'the name of the
creditor to whom the debt is owed.'").

Moreover, defendant also provided admissible evidence
establishing the chain of title of ownership of plaintiff's debt
as it was sold from Genesis Bankcard Services, Inc. and Genesis
Consumer Funding, LLC to Galaxy International Purchasing, LLC.
(*See* ECF No. 24-3, Ex. 3 (bills of sale transferring plaintiff's
debt and redacted spreadsheet containing plaintiff's account
information).) This documentation also confirms the valid
identification of the original and current creditor stated on
plaintiff's Collection Letter. (*Id.*) Based on the foregoing,

the court concludes that the evidence proffered by Mandarich establishes no genuine dispute of material fact for trial regarding plaintiff's Counts 1-4, alleging FDCPA violations for failures to state the amount of any debt allegedly owed and the name of the creditor.

Rather than confront the evidence submitted by Mandarich, plaintiff improperly attempts to switch the burden of proof to Mandarich by arguing that "there is no evidence in the record to show that debt ever existed and, if it did, that Galaxy is the creditor to whom the Alleged Debt is purportedly owed, and Plaintiff avers that she does not know who or what Galaxy is and/or its alleged connection to the debt purportedly owed." (Pl. Opp. at 16.)  As discussed above, such evidence does exist and is admissible for the reasons stated in this court's analysis of plaintiff's motion to strike.  (*See supra* Discussion I.)  More fundamentally, as previously explained, plaintiff cannot withstand defendant's motion for summary judgment by simply stating "no evidence" exists to prove Mandarich's compliance with the FDCPA; instead, plaintiff must set forth evidence showing a factual dispute as to Mandarich's alleged violations of the FDCPA.  Here, plaintiff's unsubstantiated claim that she does "not know what the purchases [on the Raymour & Flanigan credit card] were for, and [] did not make them" is not sufficient to create a genuine dispute of

36

material fact.  (ECF No. 30-1, Declaration of Chardee Parker in Support of Plaintiff's Motion for Summary Judgment ("Parker Decl.") ¶ 14.)

Plaintiff also argues that defendant's evidence of "billing statements" are insufficient to show existence of the underlying debt because although the billing statements bear plaintiff's name, they were sent to an address at which plaintiff never resided.  (*See* Pl. Mem. at 11, 20; Parker Decl. ¶¶ 10-13.)  Plaintiff argues that the use of these "billing statements" instead support her "assertion that she was the victim of identity theft (or mistaken identity) with respect to the alleged Debt, and does not owe the same."  (Pl. Opp. at 2, 4.)  Plaintiff asserts that the court must accept that defendant "has not proven [p]laintiff's obligation of the underlying debt" because to accept defendant's position in light of plaintiff's purported identity theft would be to "turn the burden on its proverbial head, to the extent that it would require plaintiff to prove a negative."[6]  (*Id.* at 4.)

---

[6]     Plaintiff also describes the evidentiary standards for obtaining default judgments in New York state court as an analogous standard for the court to consider when assessing plaintiff's FDCPA claims.  (*See* Pl. Mem. at 17-19.)  This court has previously rejected substantially similar arguments in a case involving similar claims (and the same plaintiff's firm), *see Danese v. Credit Control, LLC et al*, 21-cv-435 (KAM) (JRC), after concluding that standards under New York state law are not relevant to the FDCPA claims brought by the plaintiff in federal court.  Similarly, here, the court declines to incorporate state law provisions into the FDCPA.  *See James v. Merchs. & Prof'ls, Inc.*, No. 03-cv-1167 (CBA) (VVP), 2010 WL 785803, at *2 (E.D.N.Y. Mar. 8, 2010) ("[T]he contention that every violation of state law

Plaintiff's statement of law is misguided and incorrect.  As more fully discussed above, plaintiff bears the same burden as other civil plaintiffs in proving the elements of her claims by a preponderance of the evidence.  At summary judgment, when confronted with evidence negating an essential element of plaintiff's claim, plaintiff must proffer admissible evidence showing a genuine dispute of material fact for trial as to the elements of her claim.  For instance, here, although plaintiff claims she cannot "prove a negative" because she cannot provide evidence showing she was a victim of identity theft or mistaken identity, the court disagrees.  (Pl. Opp. at 4.)  During discovery, plaintiff could have introduced evidence of any purported identity theft in the form of police reports, an FTC identity theft report, credit reports, contemporaneous billing records, reports to her credit card company, or other documents tending to show plaintiff did not accrue charges on the credit card at issue.  Because plaintiff failed to provide such evidence, she cannot now withstand defendant's motion for summary judgment by switching the burden of proof to defendant or simply stating that she "cannot prove a negative."  (Pl. Opp. at 4); see Simsbury-Avon Pres. Club, Inc. v. Metacon Gun Club, Inc., 575 F.3d 199, 204 (2d Cir. 2009) (Once the moving party

raises a federal claim under the FDCPA reflects a false, narrow, and overly mechanical reading of the statute." (internal quotation marks omitted)).

has met its burden, the nonmoving party normally "must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment.").

Accordingly, defendant satisfied its burden of demonstrating that there is no genuine dispute of material fact with respect to the amount of the debt owed by plaintiff and the name of the creditor, as reflected in the Collection Letter.[7] For the foregoing reasons, the court concludes that no reasonable jury could find in favor of plaintiff on Counts 1-4 and grants defendant's motion for summary judgment as to plaintiff's Counts 1-4.

## IV. The Validation Notice (Counts 5 and 7)

Plaintiff brought two "overshadowing" claims (Counts 5 and 7), alleging that the collection letter's format and letterhead overshadow the statutorily required validation notice in violation of § 1692g(b).  (Compl. ¶¶ 117-153, 168-220.)  In response to defendant's motion for summary judgment, plaintiff voluntarily withdrew Count 7, conceding that "[g]iven the recent developments in case law on this topic," Count 7 is not viable on the facts present here.  (Pl. Opp. at 17.)  Accordingly, the

---

[7]     Furthermore, any alleged discrepancy in plaintiff's address of record is immaterial to the claims here because defendant has put forth evidence establishing that plaintiff owed the debt, which was ultimately sold to Galaxy International Purchasing, LLC.  Furthermore, as described above, plaintiff did not offer any evidence showing that the debt was not incurred on plaintiff's account, other than plaintiff's unsubstantiated statement that she did not accrue the debt.

court grants defendant's motion for summary judgment on Count 7 and dismisses the claim with prejudice.

### A. Law firm's Letter Overshadowing the Validation Notice (Count 5)

Plaintiff alleges that the Collection Letter is in violation of §§ 1692g(b) and 1693e because the "least sophisticated consumer could reasonably interpret" the Collection Letter to mean that "even if she exercises her validation right" or "disputes the validity of the debt," she could be subject to legal action because the letter is coming from a law firm and is printed on the law firm's letterhead. (Compl. at ¶¶ 130-53.)  Thus, plaintiff asserts that defendant violated § 1692g(b) because the "potential threat of legal action overshadows the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor."  (*Id.* ¶ 146.)  Defendant asserts that the letter "neither threatens legal action nor overshadows the validation notice."  (Def. Mem. at 4.)

A communication from a debt collector may be a threat if the least sophisticated consumer "would interpret th[e] language to mean that legal action was authorized, likely, and imminent." *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 62 (2d Cir. 1993) (finding that a letter "implied that the commencement of legal proceedings was imminent" by falsely

40

stating that a debt collection agency was authorized to commence legal proceedings). "[A] collection letter that 'only advises a debtor that the collection agency has several options with which to pursue the debt' will generally be found insufficient to constitute a threat even in the eyes of the least sophisticated consumer." *Moukengeschaie v. Eltman, Eltman & Cooper, P.C.*, No. 14-cv-7539 (MKB), 2016 WL 1274541, at *5 (E.D.N.Y. Mar. 31, 2016) (quoting *Larsen v. JBC Legal Grp., P.C.*, 533 F. Supp. 2d 290, 302 (E.D.N.Y. 2008)). "Equivocal statements that a debt collector 'may consider additional remedies' or 'such action as necessary' . . . do not threaten imminent legal action, even after an account has been placed with an attorney." *Guzman v. I.C. Sys., Inc.*, No. 20-cv-4545 (ARR), 2021 WL 861914, at *2 (E.D.N.Y. Mar. 8, 2021) (internal quotation marks omitted); *see also Avila v. Riexinger & Assocs., LLC*, 644 F. App'x 19, 22 (2d Cir. 2016) (summary order) (explaining that, as the collection letter stated that the debt collector "*may* consider additional remedies" or "such action as necessary," "[s]uch equivocal statements do not give rise to liability under [s]ection 1692e").

Here, the Collection Letter makes no reference to any consequence of failing to pay the account. (ECF No. 1-1, Collection Ltr.) The letterhead includes the heading "Mandarich Law Group, LLP, Attorneys at Law" with the firm's contact

information and lists the states in which defendant employs attorneys licensed to practice. (*Id.* at 1.) Contrary to plaintiff's assertion, however, the mere fact that a Collection Letter is printed on law firm letterhead does not, by itself, imply an immediate threat of legal action overshadowing a validation notice in violation of the FDCPA.[8] *See Hochhauser v. Grossman & Karaszewski, PLLC*, No. 19-cv-2468 (ARR)(RML), 2020 WL 2042390, at *5 (E.D.N.Y. Apr. 28, 2020) ("A debt collection letter on a law firm's letterhead does not inherently overshadow the validation notice."); *see also Nichols v. Frederick J. Hanna & Assocs., PC*, 760 F. Supp. 2d 275, 279 (N.D.N.Y. 2011) ("Several courts have held that a letter written on a law firm's letterhead is insufficient, on its own, to imply that litigation is imminent." (collecting cases)). The Collection Letter here does not refer to any consequence of failing to pay the account, does not set any deadline for plaintiff to respond, and expressly notes that Mandarich would suspend its efforts to collect the debt if plaintiff sought to exercise her rights to validate the debt. (*See* Collection Ltr. at 1.) The validation

---

[8]     Plaintiff's references to Second Circuit decisions requiring certain disclosures in collection letters refer to circumstances where "the law firm or attorney sending the letter is not, at the time of the letter's transmission, acting as an attorney." *Wendel v. Mullooly, Jeffrey, Rooney & Flynn, LLP*, 689 F. App'x 45, 46 (2d Cir. 2017) (summary order) (quoting *Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360, 364 (2d Cir. 2005)). In other words, those required disclosures govern situations where there is some false representation of attorney involvement, not, as here, some purported threat of immediate legal action overshadowing a validation notice. *See Greco*, 412 F.3d 362-63.

notice expressly lays out the plaintiff's rights, and "the fact that the debt collector is a law firm does not contradict the validation notice." *Hochhauser*, 2020 WL 2042390, at *5. Indeed, plaintiff does not identify any language purportedly constituting an imminent legal threat and, at her deposition, conceded that the only basis for her belief that the Collection Letter threatened legal action was the presence of the Mandarich letterhead. (*See* ECF No. 29, Joint Deposition Transcript Appendix, Appendix D, Deposition of Chardee Parker, at 21:16-21 ("And is it your belief that this letter threatens legal action?" A: "Yes." Q: "Why did you believe that?" A: "Because I saw 'attorneys at law' at the top.").  As explained above, however, the fact that a collection letter is printed on law firm letterhead, without more, is not a threat of imminent legal action overshadowing the validation notice in violation of the FDCPA.[9]  For these reasons, the court grants defendant's motion for summary judgment as to plaintiff's Count 5.

---

[9]     The court recognizes that the Collection Letter states that "[t]he law does not require [Mandarich] to wait until the end of the thirty-day period before suing you to collect this debt."  (Collection Ltr. at 1.)  Although this statement references possible litigation, the court is satisfied that the Collection Letter, read as a whole, would not have left the "least sophisticated consumer" uncertain as to her rights under the FDCPA.  To be sure, the Collection Letter clarifies, after the reference to a lawsuit, that: "If, however, you notify us in writing within the thirty-day period described [above] . . . the law requires us to suspend our efforts (through litigation or otherwise) to collect the debt until we mail the requested information to you."  (*Id.*); *see Shapiro v. Riddle & Assocs., P.C.*, 240 F. Supp. 2d 287, 290 (S.D.N.Y.) (reviewing a collection letter with substantially similar language and concluding that, read as a whole, the collection letter would not overshadow or contradict the debt validation notice), *aff'd*, 351 F.3d 63 (2d Cir. 2003).  In any event, plaintiff does not

## V. Meaningful Attorney Involvement (Count 6)

Finally, plaintiff alleges in her complaint that defendant violated § 1692e(3) because the Collection Letter "misleads consumers into believing that there is meaningful attorney involvement in the collection of the debt."  (Compl. at ¶ 163.)  Plaintiff alleges that "[n]o attorney employed by Defendant had any meaningful involvement in the day-to-day collection of Plaintiff's alleged debt" and that defendant violated § 1692e(3) by "falsely implying that its collection letter is a communication from an attorney acting as an attorney."  (*Id.* ¶¶ 159, 167.)

In her motion for summary judgment on Count 6, plaintiff argues that the record before the court: confirms that defendant did not require Georgia licensed attorney Darya Yashina-Callaway (the attorney assigned to review plaintiff's account) "to keep contemporaneous time records"; does not provide "the number of cases" Yashina-Callaway was working on; shows that Yashina-Callaway may have "checked all the boxes" when reviewing the Collection Letter; shows that Yashina-Callaway did not review the final Collection Letter before sending it; and finally, does not explain why Yashina-Callaway's "printer is located some one thousand (1000) miles away from her

---

reference this language in her complaint or briefing, and, as noted above, conceded at her deposition that her only basis for believing that legal action was imminent was the use of the law firm letterhead.

computer." (Pl. Mem. at 21-22.) Defendant moves for summary
judgment on Count 6, stating that the record shows no genuine
dispute of material fact regarding Yashina-Callaway's meaningful
review of plaintiff's account file. (Def. Mem. at 15-16.)

Section 1692e(3) prohibits "[t]he false representation
or implication that any individual is an attorney or that any
communication is from an attorney." 15 U.S.C. § 1692e(3).
"[S]ome degree of attorney involvement is required before a
letter will be considered 'from an attorney' within the meaning
of the FDCPA." *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d
292, 301 (2d Cir. 2003) (citing *Clomon*, 988 F.2d at 1321). "[A]
letter sent on law firm letterhead, *standing alone*, does
represent a level of attorney involvement to the debtor
receiving the letter." *Greco*, 412 F.3d at 364.

Here, the Collection Letter is printed on a law firm
letterhead and contains no disclaimer regarding the lack of
attorney involvement in the collection of plaintiff's debt.
(*See* Collection Ltr.) Thus, under Second Circuit precedent, the
Collection Letter by virtue of its Mandarich letterhead,
represents "a level of attorney involvement to the debtor
receiving the letter." *Greco*, 412 F.3d at 364. Accordingly,
the open question is whether an attorney was meaningfully
involved in the collection process. *See Moukengeschaie*, 2016 WL
1274541, *16 (A collection letter on a law firm letterhead "may

45

violate section 1692e(3) where 'the attorney or firm had not, in fact, engaged in [the] implied level of involvement." (internal quotation marks and citation omitted)).

In *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292 (2d Cir. 2003), the Second Circuit declined to set forth a bright-line test to determine whether a sufficiently meaningful attorney review has occurred in a given case, *see id.* at 304; instead, the court noted that the analysis would turn on, among other things, "precisely what information the affiants reviewed, how much time was spent reviewing plaintiff's file, and whether any legal judgment was involved with the decision to send the letters," *id.* at 307.

Courts in this Circuit have granted summary judgment when law firms have provided evidence that an attorney personally reviewed a debtor's file before a letter was sent. *See Mizrahi v. Network Recovery Servs., Inc.*, No. 98-cv-528 (ERK) (JLC), 1999 WL 33127737, at *4 (E.D.N.Y. Nov. 5, 1999) (holding that an attorney was meaningfully involved because she conducted initial reviews of the debtor files and then divided them amongst herself and two paralegals for further in-depth review before letters were sent); *Kapeluschnik v. Leschack & Grodensky, P.C.*, No. 96-cv-2399 (ERK)(CLP), 1999 WL 33973360, at *5 (E.D.N.Y. Aug. 26, 1999) (granting summary judgment because, *inter alia*, individual attorneys were assigned to "supervise the

46

collection of information from creditors, and the sending of letters in each case" and the defendant "named a specific attorney who supervised and directed each plaintiff's case").

In the instant case, other than contesting the admissibility of the Whitlatch Affidavit, which this court rejected for the reasons above, plaintiff has cited to no evidence supporting her claim that an attorney was not meaningfully involved in review of her debt file. On the other hand, defendant has provided evidence describing the steps that attorney Darya Yashina-Callaway undertook in reviewing plaintiff's debt file.

Specifically, defendant provided a sworn affidavit and a detailed history report memorializing the activities taken regarding plaintiff's account file.[10] (*See* Whitlatch Aff.; ECF No. 24-1, Ex. C, History Report, at 1 (identifying plaintiff Chardee T. Parker and plaintiff's account number ending in *****0991).) According to the history report, Mandarich performed multiple background checks on plaintiff's account "to identify whether Parker had filed for bankruptcy, was

---

[10]    To the extent the Whitlatch Affidavit arguably contains some inadmissible evidence in the form of hearsay testimony (e.g., information exceeding Ms. Whitlatch's personal knowledge), the court concludes that defendant could present the contents of such evidence in an admissible form at trial. *See Harleysville Worcester Ins. Co. v. Wesco Ins. Co.*, 752 F. App'x 90, 93-94 (2d Cir. 2019) (summary order) ("[S]o long as evidence 'will be presented in admissible form at trial,' it may be considered on summary judgment." (quoting *Santos v. Murdock*, 243 F.3d 681, 683 (2d Cir. 2001))).

imprisoned, in the military, or was deceased according to the social security index." (Whitlatch Aff. ¶¶ 25-26; History Report at 2-3.) Further, after the plaintiff's records were collected by Mandarich, on September 4, 2018, a legal assistant "reviewed the account for sufficient media and jurisdiction." (History Report at 6.)

On September 20, 2018, attorney Yashina-Callaway conducted an initial review plaintiff's media by reviewing plaintiff's account files, including client information submitted by Galaxy International Purchasing, LLC, and also bill of sale files providing chain of title information for plaintiff's account. (Whitlatch Aff. ¶¶ 34-36; History Report at 6.) Pursuant to Mandarich's internal "Attorney Meaningful Involvement Procedure" (*see* ECF No. 24-1, Ex. B, Attorney Meaningful Involvement Procedure (the "policy")), Yashina-Callaway "reviewed all the Account statements, including the final charge-off statement, for Parker's Account." (Whitlatch Aff. ¶ 37.) The history report indicates that an "[a]ttorney has reviewed minimum requirements for potential suit eligibility; the account will be placed for collections." (History Report at 6.) On September 13, 2018, the history report notes, "Initial Attorney Review Completed – Pass." (History Report at 7.) In sum, the undisputed record evidence establishes that plaintiff's account file -- including account-

48

level information about plaintiff's debt, charges accrued, and the sale of the debt to Mandarich's client -- was reviewed by both a legal assistant and a practicing attorney before the Collection Letter was sent on November 8, 2019.[11]  Moreover, the degree of the attorney review suggests some legal judgment was necessarily exercised because Yashina-Callway "reviewed minimum requirements [of plaintiff's account] for potential suit eligibility" before concluding that "the account will be placed for collections."  (History Report at 6.)  Based on this record, the court concludes that there is no genuine dispute of material fact regarding attorney Yashina-Callaway's meaningful involvement in reviewing plaintiff's account file, and, accordingly, grants defendant's motion for summary judgment on Count 6.

---

[11]     Moreover, the court also notes that plaintiff failed to provide evidence suggesting that Mandarich's review of plaintiff's file was cursory or otherwise in violation of standards established by the Second Circuit. *See Clomon*, 988 F.2d at 1320 (finding liability under section 1692e(3) based on mass-produced collection letters bearing the facsimile signature and letterhead of an attorney who "played virtually no day-to-day role in the debt collection process," including reviewing neither the consumers' files nor the collection letters); *Miller*, 321 F.3d at 304 (finding a mere review of basic information such as name, social security number, address, telephone number, account number and alleged balance due alone is not the exercise of professional judgment needed concerning the existence of a valid debt before sending a collection letter).  As discussed above, once defendant carried its burden in providing evidence showing no genuine dispute of material fact regarding plaintiff's claim, plaintiff, as the party with the burden of proof at trial on her claims, cannot withstand summary judgment without proffering evidence sufficient to allow a trier of fact to find in her favor on her claim (i.e., without proffering evidence showing a dispute of material fact). *See Jackson*, 766 F.3d 195 n.3.

**VI.   Plaintiff's Request to Amend the Complaint**

Finally, plaintiff requests this court grant leave to amend to add an "unauthorized practice of law" claim to the complaint pursuant to Federal Rule of Civil Procedure 15.  (Pl. Mem. at 24-25.)  Specifically, plaintiff asserts that Georgia-licensed attorney Yashina-Callaway engaged in the unauthorized practice of law by sending a collection letter to a New York resident.  (*Id.*)

Although "[t]he court should freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2), the decision whether to grant a plaintiff's motion to file an amended complaint remains within the court's discretion, *see Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995), and an amendment may be prohibited where there has been bad faith or dilatory motives, where the amendment would be futile, or where the amendment would cause undue delay or undue prejudice to the opposing party.  *See Foman v. Davis*, 371 U.S. at 178, 182 (1962).

Here, the court denies plaintiff leave to amend because the proposed amendment would be futile.  Specifically, plaintiff cites to no legal authority holding that an out-of-state attorney's initial review of a debt file would constitute the unauthorized practice of law in New York, where the collection letter was ultimately sent by a debt collector

50

licensed in the State of New York.  Indeed, the authority cited by plaintiff stands for the unremarkable proposition that a debt collector violates the FDCPA when the debt collector operates without a license as required by New York City regulations. (*See* Pl. Mem. at 24 (citing *Williams v. Goldman & Steinberg, Inc.*, No. 03-cv-2132 (DGT), 2006 WL 2053715, at *1 (E.D.N.Y. July 21, 2006)).)  It is undisputed that Mandarich is licensed to operate in the State and City of New York, and it is clear that the Collection Letter is from Mandarich Law Group, LLP. (See Collection Ltr.)  For these reasons, plaintiff's request for leave to amend is denied.

### CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is granted in its entirety.  Plaintiff's motion for summary judgment is denied.  The Clerk of Court is respectfully requested to enter judgment for defendant and close this case.

SO ORDERED.


_____
/s/
Hon. Kiyo A. Matsumoto
United States District Judge
Eastern District of New York


Dated: Brooklyn, New York
       June 9, 2021

51